**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| DEVAN CHOKSHI, *individually and as personal representative of the estate of Freni Hazare, deceased Estate of Freni Hazare, and* | ) ) ) ) ) ) | |
| VATSAL CHOKSHI, *individually and as personal representative of the estate of Dhruv Chokshi, deceased Estate of Dhruv Chokshi,* | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 2:25-cv-05446-DCN |
| vs. | ) ) | **ORDER** |
| JMG REALTY, INC. *also known as* ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY *also known as* DEPOSITORS INSURANCE COMPANY *also known as* LIBERTY SURPLUS INSURANCE CORP., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on plaintiffs Devan Chokshi and Vatsal Chokshi's ("plaintiffs") motion to remand and/or, in the alternative, motion for leave to amend their complaint, motion for stay of response to defendants' motion to dismiss and/or, in the alternative, motion for extension of time, ECF No. 11. Also before the court is defendants Allied Property and Casualty Insurance Company ("Allied"), Depositors Insurance Company ("Depositors"), and Liberty Surplus Insurance Corporation's ("Liberty") (together, the "insurance defendants") joint motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 8. For the reasons set forth below, the

1

court denies each of plaintiffs' motions and grants the insurance defendants' motion to dismiss.

## I.  BACKGROUND

### A.  Factual Background and Underlying Action

A fire occurred at Summerville Station Apartments (the "apartment complex") in Summerville, South Carolina on September 29, 2022 in which Freni Hazare and her son Dhruv Chokshi (together, the "decedents") tragically died.  ECF No. 1-1, Amend. Compl. ¶ 1.  Plaintiff Devan Chokshi is Freni Hazare's surviving son and was appointed as personal representative of his mother's estate.  Id. ¶ 6.  Plaintiff Vatsal Chokshi is Dhruv Chokshi's father and was appointed as personal representative of his son's estate.  Id. ¶ 7. On May 30, 2023, plaintiffs initiated a wrongful death and survival action (the "underlying action") against numerous defendants on behalf of their deceased family members in the Dorchester County Court of Common Pleas.  ECF No. 8-1; Chokshi et al. v. BIF-Summerville Station LLC et al., No. 2023-CP-18-00836 (Dorchester Cnty. Ct. C.P. May 30, 2023).  Plaintiffs filed a fourth amended complaint in the underlying action on September 24, 2024, naming "Asset Living Southeast, LLC, f/k/a JMG Realty, LLC" as an additional defendant.  ECF No. 8-2 ¶ 16.  In this complaint, plaintiffs allege that the entity formerly known as JMG Realty, LLC ("JMG Realty") negligently performed construction on the exterior of the apartment complex that contributed to the outbreak of the fire in which decedents died.  Id. ¶¶ 42–44.

### B.  JMG Realty's Corporate History

The instant suit stems from plaintiffs' desire to maintain an action against JMG Realty (and their former insurers) despite this entity no longer existing as "JMG Realty,

LLC." See Am. Compl. ¶ 18.  As such, JMG Realty's corporate history is relevant to the instant motion.  JMG Realty was first organized as a Georgia corporation known as JMG Realty, Inc.  ECF No. 8-3 at 2.  Then, on October 29, 2021, JMG Realty Inc. filed articles of conversion with the Georgia Secretary of State converting JMG Realty, Inc. to JMG Realty, LLC.  Id. at 3.  This iteration of "JMG Realty" is the entity that existed at the time JMG Realty performed the allegedly negligent construction on the apartment complex. See id.; Amend. Compl. ¶ 1.  On December 14, 2023, the Georgia Secretary of State certified that JMG Realty, LLC amended its articles of organization to change its name to Asset Living Southeast, LLC.  ECF No. 8-3 at 9.  Thus, the entity formerly known as JMG Realty, LLC now exists as Asset Living Southeast, LLC.[1]  See id.

### C. Plaintiffs File the Instant Suit

Plaintiffs initiated this declaratory judgment action styled as Devan Chokshi et al. v. JMG Realty, Inc. a/k/a Allied Insurance Co., a/k/a Depositors Insurance Company, and a/k/a Liberty Surplus Insurance Corp.[2] in the Dorchester County Court of Common Pleas on May 7, 2025.  ECF No. 1-1 at 4; No. 2025-CP-18-01088 (Dorchester Cnty. Ct. C.P. May 7, 2025).  Plaintiffs filed an amended complaint on May 8, 2025 while the action was still pending in state court, which is the operative complaint for purposes of these motions.  See ECF No. 1-1 at 26, Amend. Compl.; ECF No. 1; ECF No. 8 at 4.

_____

[1] The court will collectively refer to JMG Realty, Inc. and JMG Realty, LLC as "JMG Realty."  The court will refer to the present iteration of JMG Realty—Asset Living Southeast, LLC—as "Asset Living."

[2] The insurance defendants note in their motion to dismiss that Allied Property and Casualty Insurance Company is improperly identified in both the complaint and amended complaint as "Allied Insurance Company."  ECF No. 8 at 1.

In the amended complaint, plaintiffs allege that the insurance defendants held policies in favor of JMG Realty at the time it performed the allegedly negligent construction.  Amend. Compl. ¶ 14.  Plaintiffs do not allege that the policies provided coverage on the date of the fire.  See id.  Plaintiffs do allege, however, that JMG Realty altered its business structure to avoid any liability arising from fire and that the insurance defendants, similarly, "are evading coverage through JMG's change in entity structure . . . ." Id. ¶¶ 8, 17.  As a result, plaintiffs claim that they have "no choice but to petition the [c]ourt for a declaratory judgment finding the Defendant Insurance Companies to be 'alter-egos' of Defendant JMG [Realty] . . . ." Id. ¶ 18.  Plaintiffs thus seek a declaration that the insurance defendants must "step into the shoes" of JMG Realty.  Id. at 8.

The insurance defendants observe that plaintiffs' declaratory judgment action "essentially repeats the allegations made and claims asserted against JMG Realty in the [underlying action] with the addition of a few allegations that reference the Insurance Defendants."  ECF No. 8 at 4.  Moreover, the insurance defendants characterize the declaratory judgment as "an improper attempt to manufacture insurance coverage where none exists by attempting to assert that three insurance companies are the 'alter-egos' of an existing and active property management company which the insurance companies previously insured."  Id. at 1–2 (emphasis in original).  The insurance defendants also note that plaintiffs named Asset Living as a defendant in the fourth amended complaint of the underlying action, which belies plaintiffs' assertion that this declaratory judgment is necessary because of "Defendant JMG's apparent 'nonexistence' " as plaintiffs have already identified and sued JMG Realty's successor-entity—Asset Living.  Id. at 4; Amend. Compl. ¶ 18.

4

### D.  Procedural History Relevant to the Pending Motions

The insurance defendants removed plaintiffs' amended complaint to this court

pursuant to diversity jurisdiction on June 13, 2025.  See ECF No. 1.  The insurance

defendants then jointly filed a motion to dismiss this action on June 20, 2025.  ECF No.

8.  Plaintiffs failed to file a response in opposition within the time allotted under the

Local Civil Rules.  ECF No. 12 at 15–16.  On July 8, 2025, plaintiffs filed their

amalgamated motion styled as a "motion to remand and/or, in the alternative, motion for

leave to amend complaint, motion for stay of response to defendants' motion to dismiss

and/or, in the alternative, motion for extension of time[.]"  ECF No. 11 at 1.  The

insurance defendants responded in opposition on July 21, 2025, ECF No. 12, to which

plaintiffs replied on July 28, 2025.  ECF No. 16.  The court held a hearing on both

motions on November 11, 2025.  ECF No. 22.  As such, the motions are fully briefed and

ripe for the court's review.

## II.  DISCUSSION

The court will first consider the motion to remand to ensure it has jurisdiction

before resolving any motions pertaining to the merits of the case.  See Burrell v. Bayer

Corp., 918 F.3d 372, 379 (4th Cir. 2019) (noting that if the case was not properly

removed due to a defect in subject matter jurisdiction, then "the district court was without

jurisdiction to rule on its merits and . . . instead was required to remand").

### A.  Plaintiffs' Motion to Remand

#### 1.  Standard of Review

Federal courts are courts of constitutionally limited jurisdiction.  Original

jurisdiction—commonly termed subject matter jurisdiction—exists where a claim arises

under federal law, see 28 U.S.C. § 1331, or where the amount in controversy exceeds the

sum or value of $75,000 and the claim is between citizens of different states, see 28

U.S.C. § 1332.

Generally, any civil action brought in a state court of which the district courts of

the United States have original jurisdiction may be removed by the defendant to the

district court of the United States for the district and division embracing the place where

such action is pending.  28 U.S.C. § 1441(a).  "The party seeking removal bears the

burden of demonstrating that removal jurisdiction is proper," Nordan v. Blackwater Sec.

Consulting, LLC (In re Blackwater Sec. Consulting, LLC), 460 F.3d 576, 583 (4th Cir.

2006), and doubts regarding the propriety of removal are to be resolved in favor of

retained state court jurisdiction, Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th

Cir. 1993).  The court may look beyond the pleadings and evaluate the entire record when

evaluating a motion to remand.  See Velasco v. Gov't of Indon., 370 F.3d 392, 398 (4th

Cir. 2004) ("when a defendant challenges subject matter jurisdiction . . . the district court

may regard the pleadings as mere evidence on the issue and may consider evidence

outside the pleadings"); Middel v. Middel, 471 F. Supp. 3d 688, 692 (D. Md. 2020)

(noting that the court "may consider facts outside the pleadings . . . when evaluating a

motion to remand.").

### 2.  Analysis

The insurance defendants removed this action pursuant to diversity of citizenship

under 28 U.S.C. § 1332(a).  See ECF No. 1.  Plaintiffs argue that "the court is divested of

diversity jurisdiction" because plaintiffs "are not seeking any monetary award[]" in this

declaratory judgment action.  ECF No. 11 at 7.  Plaintiffs thus contend that the amount in

controversy does not exceed the jurisdictional threshold of $75,000 provided in 28 U.S.C. § 1332(a). Id. at 7–8. In the alternative, plaintiffs argue that the court should remand the case, applying Colorado River abstention. Id. at 8. Defendants respond that plaintiffs "are either unaware or fail to understand how the amount in controversy is . . . determined in the context of a declaratory judgment action[]" and that Colorado River abstention "has no application here." ECF No. 12 at 7–9. Plaintiffs reply brief simply re-states the arguments presented in their initial motion. See ECF No. 16 at 4–6. The court will first determine whether there is complete diversity of citizenship between the parties before analzying the amount in controversy and the Colorado River abstention doctrine.

### a. Diversity of Citizenship

As a preliminary matter, the insurance defendants assert in their notice of removal that "there is diversity of citizenship between the parties[,]" ECF No. 1 ¶ 14, and plaintiffs do not dispute this assertion, see ECF No. 11. Each insurance defendant is a corporate entity, id. at 11–13, and a corporation is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). Defendants Allied and Depositors are incorporated under the laws of the state of Iowa and maintain their principal places of business in Iowa, ECF No. 1 ¶¶ 11–12, and defendant Liberty is incorporated under the laws of the state of New Hampshire and maintains its principal place of business in Massachusetts. Id. ¶ 13. Thus, Allied and Depositors are citizens of Iowa while Liberty is a citizen of both New Hampshire and Massachusetts. The notice of removal also provides that both plaintiffs are citizens of South Carolina for purposes of this suit, id. ¶¶

8–9, and plaintiffs do not dispute this assertion in their motion to remand, see ECF No. 11. Because plaintiffs do not share the citizenship of any of the insurance defendants, the court is satisfied that these parties are completely diverse as required under 28 U.S.C. § 1332(a). See Navy Fed. Credit Union v. LTD Fin. Servs., LP, 972 F.3d 344, 352–53 (4th Cir. 2020) ("a federal court must determine and compare the citizenship(s) of all plaintiffs and all defendants" to ensure that "no plaintiff . . . share[s] a citizenship with any defendant[]" to fully assess diversity of citizenship).

The caption of plaintiffs' amended complaint styles the defendants as "JMG Realty, Inc. a/k/a Allied Insurance Co., a/k/a Depositors Insurance Company, and a/k/a Liberty Surplus Insurance Corp." See Amend. Compl. Consequently, the only remaining party whose citizenship could be relevant for diversity purposes is Asset Living as it is the successor entity of JMG Realty.[3] The court is satisfied that Asset Living's citizenship is not relevant for purposes of diversity because JMG Realty is merely a "nominal" or "formal" party. See Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980) (Federal courts must "disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.") A party is considered nominal when it has "no immediately apparent stake in the litigation either prior to or subsequent to the act of removal." Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co., 736 F.3d 255, 260 (4th

---

[3] Indeed, the insurance defendants did obtain Asset Living LLC's consent to remove this action pursuant to the requirement that all defendants must consent to removal under 28 U.S.C. § 1446(b)(2)(A). See ECF No. 1 ¶ 25. Even though the insurance defendants maintain that Asset Living "has not been served, and therefore, its consent at this juncture is unnecessary," id., counsel for the insurance defendants stated at the hearing on these motions that consent was obtained in an abundance of caution. See ECF No. 22.

Cir. 2013). "In other words, the key inquiry is whether the suit can be resolved without affecting . . . the nominal defendant in any reasonably foreseeable way." Id. Asset Living has no immediately apparent stake in this suit because plaintiffs—believing that JMG Realty no longer exists—only seek relief from the insurance defendants using an "alter-ego" theory of corporate liability. See Amend. Compl. ¶ 18. The fact that plaintiffs only attempted to serve process on the insurance defendants, and not Asset Living, see id. ¶¶ 9–11; ECF No. 1 ¶¶ 2–5, reinforces the conclusion that the insurance defendants are the only "real parties" from whom relief is sought, see Hartford Fire Ins. Co., 736 F.3d at 260. As such, Asset Living's citizenship is not relevant for purposes of diversity because it has no "interest in the outcome of [a] case[ ]" to which it has not been named as party. Id. at 261.

Having determined that Asset Living's citizenship is not relevant for diversity purposes, and that no insurance defendant is a citizen of the same state as plaintiffs, the court finds that the parties satisfy the complete diversity requirement of 28 U.S.C. § 1332(a). See Navy Fed. Credit Union, 972 F.3d at 352 (noting that "no plaintiff may share a citizenship with any defendant" to satisfy the requirement of complete diversity") (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

### b. Amount in Controversy

The court now turns to the aspect of diversity jurisdiction that is in dispute— whether the amount in controversy exceeds $75,000 as required under 28 U.S.C. § 1332(a). Plaintiffs argue that the amount in controversy cannot be met because they solely request declaratory relief and "are not seeking any monetary award[.]" ECF No. 11 at 7. The insurance defendants correctly respond that this "assertion is incorrect."

ECF No. 12 at 7.  Contrary to plaintiffs' assertion, "[i]n actions seeking declaratory . . . relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013). Where the existence of coverage under an insurance policy is at issue in a declaratory judgment, the amount in controversy is the maximum amount of coverage available under the policy.  See e.g., State Farm Auto. Ins. Co. v. McWhite, 2016 WL 1182436, at *3 (D.S.C. March 28, 2016); Morgan v. Liberty Mut. Ins. Co., 261 F. Supp. 709, 712 (D.S.C. 1966).

In their amended complaint, plaintiffs allege that the insurance defendants "are evading coverage through JMG's change in entity structure . . . allowing [them] to deny coverage for the work performed."  Amend. Compl. ¶ 17 (emphasis added).  While this may be a novel theory of recovery, "the value of the object of the litigation[ ]" is at least the amount of coverage available under each of the insurance defendants' policies issued to JMG Realty.  See Francis, 709 F.3d at 367.  Allied's policy issued to JMG Realty provides a "general aggregate limit" of $2,000,000.  ECF No. 8-4 at 19.  Depositor's policy issued to JMG Realty provides for a "per occurrence" limit of $5,000,000.  ECF No. 8-5 at 10.  Liberty's policy issued to JMG Realty provides for an "aggregate limit" of $5,000,000. ECF No. 8-6 at 8.  As such, the amount in controversy well-exceeds the $75,000 jurisdictional threshold for each of the insurance defendants.  See 28 U.S.C. § 1332(a).  Having determined that the court has subject matter jurisdiction because this case meets both the diversity of citizenship and amount in controversy requirements of 28 U.S.C. § 1332(a), the court now turns to abstention.

### c. Colorado River Abstention

Plaintiffs alternatively argue that remand is proper because removal of this suit is "violative of the <u>Colorado River</u> doctrine[.]"  ECF No. 11 at 8.  Plaintiffs' argument is more accurately described as a request for the court to abstain from hearing this case irrespective of the existence of subject matter jurisdiction.  The insurance defendants aptly observe that <u>Colorado River</u> abstention "is not a 'rule' that can be violated by removal" but rather "allows a district court to abstain from exercising its jurisdiction in very limited circumstances—which are not present here."  ECF No. 12 at 8.

At the outset, "[a]bstention from the exercise of federal jurisdiction [under <u>Colorado River</u>] is the exception, not the rule."  <u>Colorado River Consv. Dist. v. United States</u>, 424 U.S. 800, 813 (1976).  A "threshold requirement" to the court's abstention under <u>Colorado River</u> is the existence of "parallel proceedings in state and federal court." <u>Gannett Co., Inc. v. Clark Const. Grp., Inc.</u>, 286 F.3d 737, 741 (4th Cir. 2002) (citing <u>Colorado River</u>, 424 U.S. at 813).  Suits are "parallel" when "substantially the same parties litigate substantially the same issues in different forums."  <u>Gannett</u>, 286 F.3d at 742 (quoting <u>New Beckley Mining Corp. v. Int'l Union, UMWA</u>, 946 F.2d 1072, 1073 (4th Cir. 1991)).

Plaintiffs do not explicitly address this threshold requirement, but their motion suggests they believe their lawsuit against numerous defendants in state court—i.e., the underlying action—constitutes a parallel proceeding.  <u>See</u> ECF No. 11 at 8–10. However, none of the insurance defendants are parties to the underlying action, and the underlying action contains no mention of insurance coverage or an "alter-ego" theory of corporate liability.  <u>Compare</u> Amend. Compl. ¶¶ 8–11, 17, <u>with</u> ECF No. 8-1.

11

Consequently, the underlying action and this suit are not parallel because they involve different parties that are litigating entirely separate issues. See Gannett, 286 F.3d at 742. Because the threshold requirement of parallel proceedings is not met, the court declines to abstain from exercising jurisdiction under the Colorado River doctrine.[4]

Having determined that this court has subject matter jurisdiction over this action and that abstention is not appropriate, the court turns to the parties' remaining motions. The court will first take up plaintiffs' request to amend their complaint, which is contained in their amalgamated motion. ECF No. 11.

### B. Plaintiff's Motion for Leave to Amend Complaint

#### 1. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Although the disposition of a motion to amend is within the sound discretion of the district court, leave to amend should be denied where the proposed amendment would be futile. See Foster v. Wintergreen Real Est. Co., 363 Fed. Appx. 269, 276 (4th Cir. 2010). An amendment to a pleading is futile when it "fails to state a claim under the applicable rules and accompanying standards[.]" Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). "Leave to amend . . . should only be denied when the proposed amendment is clearly insufficient . . . on its

---

[4] The court also denies plaintiffs' accompanying request for attorney's fees resulting from the insurance defendants' alleged "wrongful removal" made pursuant to 28 U.S.C. § 1447(c), ECF No. 11 at 12, because this suit was properly removed pursuant to § 1446, and § 1447(c) only permits a fee award as a part of "[a]n order remanding the case[.]" § 1447(c).

face." Foster, 363 Fed. Appx. at 276 (alterations in original) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986)).

### 2. Analysis

Plaintiffs' amalgamated motion seeks leave to amend their amended complaint to "clarify the relief sought[.]" ECF No. 11 at 10. In making this request, plaintiffs do not provide the court with any citation to the Federal Rules of Civil Procedure or other supporting authority in their initial motion. See ECF No. 11 at 10–12. Only in plaintiffs' reply brief do they clarify that their request is made pursuant to Federal Rule of Civil Procedure 15(a). ECF No. 16 at 6. Plaintiffs have attached their proposed second amended complaint as an exhibit to their amalgamated motion. ECF No. 11-9.

The proposed second amended complaint seeks "an order of this [c]ourt finding Defendants jointly and severally liable for any judgment, verdict, or other award in favor of Plaintiffs and against Defendant JMG [Realty] in the underlying action pursuant to the policies in Defendant JMG's favor during the relevant time." Id. ¶ 49. Plaintiffs believe they are entitled to such an order because the insurance defendants' policies issued to JMG Realty "were in effect at the time of construction" meaning the insurance defendants must "defend and indemnify Defendant JMG [Realty] as if Defendant JMG [Realty] were the same entity as existed at the time of the fire."[5] Id. ¶ 48.

The insurance defendants respond that plaintiffs' request should be denied because the proposed second amended complaint fails to state a claim as plaintiffs lack

---

[5] Somewhat inexplicably, plaintiffs' second amended complaint still contains the allegation that "[d]ue to Defendant JMG's apparent 'nonexistence,' plaintiffs have no choice except to request this [c]ourt's declaratory judgment finding the [insurance defendants] to be 'alter-egos' of Defendant JMG [Realty.]" ECF No. 11-9 ¶ 18.

standing to enforce insurance contracts to which they are not a party.  ECF No. 12 at 12–13.  In other words, the insurance defendants assert that granting plaintiffs' motion for leave to amend would be futile and that "the futility of this amendment is readily apparent on its face."  ECF No. 12 at 12.

The South Carolina Supreme Court has held that when a plaintiff is not in privity of contract with an insurer, the plaintiff cannot enforce an insurance contract between the insurer and its insured.  Major v. Nat'l Indem. Co., 229 S.E.2d 849, 850 (S.C. 1976); see also Nationwide Mut. Ins. Co. v. Tate, 438 S.E.2d 266, 268 (S.C. Ct. App. 1993) (affirming trial court's determination that third-party to insurance contract "did not have standing" to "enforce a duty to defend" on the insurer); Park v. Safeco Ins. Co. of America, 162 S.E.2d 709, 710 (S.C. 1968) (observing the absence of a "real or actual controversy" between plaintiff and insurer when plaintiff has no contractual relationship with insurer).  In recognition of these principles, this court refused to grant declaratory relief to an insurer seeking a declaration that another insurer must defend their shared insured because South Carolina law does not permit a claim by a "stranger to the contract[.]"  Auto-Owners Ins. Co. v. Travelers Cas. and Sur. Co. of Am., 2014 WL 3687338, at *6 (D.S.C. July 22, 2014) (quoting Sloan Constr. Co., Inc. v. Central. Nat. Ins. Co. of Omaha, 236 S.E.2d 818, 189 (S.C. 1977)).

Here, plaintiffs are not parties to the insurance contracts between JMG Realty and the insurance defendants.  See ECF Nos. 8-4, 8-5, 8-6.  The plaintiffs thus lack standing to enforce the terms of these contracts under South Carolina law because they are strangers to the contracts.  See Major, 229 S.E.2d at 850; see also Auto-Owners Ins. Co., 2014 WL 3687338, at *6.  Because South Carolina law does not recognize the claims that

14

plaintiffs' second amended complaint asserts, it would be futile to allow plaintiffs leave to amend their complaint, See Foster, 363 Fed. Appx. at 276. Accordingly, the court denies plaintiffs' motion for leave to amend their complaint.

### C. Plaintiffs' Motion to Stay/Extend Time

The court will now address plaintiffs' request for a stay of response or extension of time to respond to the insurance defendants' motion to dismiss. See ECF No. 11 at 1, 13. The court notes at the outset that plaintiffs' only obliquely reference this request two times in their amalgamated motion and provide no supporting authority for their request. See id. at 4, 13.

The insurance defendants naturally respond that plaintiffs "make no attempt whatsoever to explain why such a stay or extension is either necessary or appropriate." ECF No. 12 at 15. The insurance defendants provide the court with authority that governs disposition of plaintiffs' request for an extension of time. Id. at 15–16. Under Federal Rule of Civil Procedure 6(b)(1), when a party fails to act within a period of time allotted under the Federal Rules, the court may grant a motion for extension of time if the movant shows "good cause" and that the failure to act resulted from "excusable neglect." Fed. R. Civ. P. 6(b)(1). Local Civil Rule 6.01 also required plaintiffs to support their motion to extend time with "an affidavit or other statement giving the reasons therefor" and required their motion to contain other information, including: (1) the date of the current deadline; (2) whether the deadline has previously been extended; (3) the number of additional days requested and the proposed date of the new deadline; and (4) whether request would affect other deadlines. Loc. Civ. Rule 6.01 (D.S.C.).

15

Even though plaintiffs were put on clear notice of their non-conformity with the Local Rules by virtue of the insurance defendants' response in opposition to their amalgamated motion, they have made no effort to comply with these rules. Instead, plaintiffs explain in their reply brief that they sought the insurance defendants' consent to an extension of time prior to the deadline's passing. See ECF No. 16 at 2. Plaintiffs also offer in reply that their request for an extension was filed "a mere eight minutes after the deadline imposed by the local rules[ ]" and that [u]nder these circumstances, Plaintiffs' submission <u>must</u> be deemed timely." <u>Id.</u> (emphasis added). To support this assertion, plaintiffs cite to non-binding authorities that stand for an entirely different proposition: that the district court has broad discretion in deciding whether to enforce or excuse a deadline. <u>See id.</u> (citing <u>Zlotnick v. Crystal Run Vill., Inc.</u> 2021 WL 4993712, at *2 n.2 (S.D.N.Y. October 27, 2021) (noting district court's discretion with respect to enforcing deadlines); <u>Mascaro Const. Co. L.P. v. Loc. Union No. 210</u>, 391 Fed. Appx. 13, 16 (2d Cir. 2010) (same); <u>Grewel v. Cuneo Gilbert LaDuca LLP</u>, 2017 WL 1215752, at *17 (S.D.N.Y. 2017) (same)). These authorities do not stand for the proposition that the court is under any obligation to extend their time to respond to the insurance defendants' motion to dismiss under these circumstances and plaintiffs have not provided any explanation as to how these cases support a finding of good cause or excusable neglect under Federal Rule of Civil Procedure 6(b)(1). The court is thus under no obligation to grant plaintiffs' request for an extension and will not do so when plaintiffs have failed to provide any explanation or legal support for their request in their initial motion. <u>See</u> ECF No. 11 at 4, 13; <u>see also</u> <u>Clawson v. FedEx Ground Package Sys., Inc.</u>, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised

16

for the first time in a reply brief or memorandum will not be considered." (citing <u>United States v. Williams</u>, 445 F.3d 724, 736 n.6 (4th Cir. 2006))).  Because plaintiffs provide no explanation or legal support for their requested extension in their initial motion, plaintiffs have not demonstrated good cause for an extension or that failure to meet the deadline resulted from excusable neglect as required under Rule 6(b)(1).  <u>See</u> <u>Kirby v. Red Bull N. Am., Inc.</u>, 2021 WL 11879723, at *2 (D.S.C. Jan. 21, 2021) (denying motion to extend time when plaintiff failed to show excusable neglect); <u>see also</u> <u>Thompson v. E.I. DuPont de Nemours & Co.</u>, 76 F.3d 530, 534 (4th Cir. 1996) ("Excusable neglect is not easily demonstrated, nor was it intended to be.").

The court also finds that plaintiffs' belated explanation in their reply brief fails to remedy the total lack of discussion in their initial motion.  <u>See</u> <u>Clawson</u>, 451 F. Supp. 2d at 734 (D. Md. 2006).  Even if the court were to consider plaintiffs' belated arguments made on reply, they also fail to show good cause or excusable neglect because plaintiffs only offer misplaced citations and inaccurate statements of the law.[6]  Because plaintiffs

---

[6] The court will also briefly address the emails with opposing counsel that plaintiffs refer to in their reply brief in an attempt to justify missing the deadline.  <u>See</u> ECF No. 16 at 2.  The emails indicate that plaintiffs' counsel only requested an extension of time from attorneys for the insurance defendants at 8:18 P.M. on July 7, 2025—less than four hours before the deadline to respond to defendants' motion to dismiss would expire.  ECF No. 11-10 at 4.  Unsurprisingly, plaintiffs' counsel did not receive the consent of all insurance defendants before the deadline given the time constraints.  <u>See</u> ECF No. 11-10.  In addition, these emails indicate that plaintiffs' counsel knew the deadline to respond to defendants' motion to dismiss would expire in a few short hours but still only managed to file a request for an extension (again, without any explanation or supporting authority) with the court <u>after</u> the deadline had passed.  <u>See</u> ECF No. 11-10; ECF No. 11.  Such actions on the part of plaintiffs' counsel constitute neglect that the court is not willing to excuse and, similarly, preclude a finding of good cause.

17

have failed to make the required showings under Federal Rule of Civil Procedure 6(b)(1), the court denies their request for an extension of time.

### D. The Insurance Defendants' Motion to Dismiss

The court now turns to the insurance defendants' motion to dismiss. ECF No. 8. As an initial matter, the insurance defendants request that the court "rule on the Motion to Dismiss based on the existing record[,]" considering plaintiffs failed to file a response in opposition within the time allotted under the Local Civil Rules. ECF No. 12 at 16. Given that plaintiffs failed to show good cause or excusable neglect for missing the deadline, the court will not grant the requested extension and will resolve the motion to dismiss on the existing record. See Loc. Civ. Rule 7.06 (D.S.C.) ("If no memorandum in opposition is filed within fourteen (14) days of the date of service [of the motion to which a response is required], the court will decide the matter on the record and such oral argument as the movant may be permitted to offer, if any.").

#### 1. Standard of Review

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the

plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft,

556 U.S. at 678.

        "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully."  Id.  Allegations that

are "merely consistent with" a defendant's liability "stop[] short of the line between

possibility and plausibility of 'entitlement to relief.'"  Twombley, 550 U.S. at 557.

Determining whether a complaint states a plausible claim for relief is a "context specific

task that requires the reviewing court to draw on its judicial experience and common

sense."  Ashcroft, 556 U.S. at 679.

        **2.  Analysis**

        Plaintiffs' amended complaint seeks relief in the form of a declaration that the

insurance defendants are "alter-egos" of JMG Realty in order to hold the insurance

defendants directly liable for the alleged negligence of its insured.  See Amend. Compl.

¶¶ 17–18.  The insurance defendants contend that plaintiffs have failed to allege any facts

that warrant such a declaration, ECF No. 8 at 10, and the court agrees.

        Under South Carolina law, "[i]t is settled authority that the doctrine of piercing

the corporate veil is not to be applied without substantial reflection."  Drury Dev. Corp.

v. Found. Ins. Co., 668 S.E.2d 798, 800 (S.C. 2008).  The South Carolina Supreme Court

has clarified that, although the terms "alter-ego" and "piercing the corporate veil" are often used interchangeably, the two terms are distinct in that the "alter-ego doctrine is merely a means of piercing the corporate veil." Id. at 800 n.1. For plaintiffs to survive a motion to dismiss their claim that JMG Realty and the insurance defendants are merely alter-egos of one another, plaintiffs must allege facts that plausibly demonstrate: (1) total dominion and control of the insurance defendants over JMG Realty and (2) resulting inequitable consequences. See Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty. v. Sch. Dist. of Colleton Cnty., 638 S.E.2d 685, 692 (S.C. 2006); Ashcroft, 556 U.S. at 678. The control element "may be shown where the subservient entity [i.e., JMG Realty] manifests no separate interests of its own and functions solely to achieve the goals of the dominant entity [i.e., the insurance defendants]." See Colleton Cnty. Taxpayers Ass'n., 638 S.E.2d at 692 (citing Peoples Fed. Sav. & Loan Ass'n v. Myrtle Beach Golf & Yacht Club, 425 S.E.2d 764, 774 (S.C. Ct. App. 1992)).

Plaintiffs' amended complaint fails to allege facts that demonstrate the insurance defendants had any level of control over JMG Realty. Plaintiffs' substantive allegations concerning the insurance defendants' relationship with JMG Realty are as follows: (1) that the insurance defendants maintained policies of insurance in favor of JMG Realty at the time JMG Realty performed the allegedly negligent construction; (2) that the insurance defendants are evading coverage through JMG Realty's change in entity structure; (3) that the insurance defendants' policies require them to "step into the shoes" of JMG Realty; and (4) that JMG Realty, "apparent[ly]" no longer exists, necessitating application of the alter-ego doctrine. Am. Compl. ¶¶ 8, 15, 17, 18. In other words, plaintiffs suggest that the insurance defendants are the alter-egos of JMG Realty because

JMG Realty no longer exists and because the insurance defendants' policies provided coverage to JMG Realty when it performed the allegedly negligent construction on the apartment complex.  See id.  Nowhere in the amended complaint do plaintiffs allege any facts that plausibly suggest the insurance defendants had any level of involvement with JMG Realty beyond that of being JMG Realty's insurers.  See Amend. Compl.  In short, the amended complaint contains no factual allegations that would allow the court to draw the reasonable inference that the insurance defendants exerted near total control over JMG Realty—a necessary element to succeed in piercing the corporate veil under an alter-ego theory.  See Colleton Cnty. Taxpayers Ass'n, 638 S.E.2d at 692 (upholding grant of summary judgment when plaintiffs had offered no evidence suggesting any level of "domination and control" of the defendant entity over the subsidiary entity); Ashcroft, 556 U.S. at 678 (observing that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  As such, the court grants the insurance defendants' motion to dismiss plaintiffs' amended complaint.[7]

---

[7] The court will also deny plaintiffs' motion for "leave to file supplemental argument" to expound upon a statute of limitations issue alluded to in footnote four of their amalgamated motion.  See ECF No. 24 at 1, 3; see also ECF No. 11 at 12 n.4.  Plaintiffs filed their amalgamated motion after the insurance defendants filed their motion to dismiss this action in its entirety.  Compare ECF No. 11, with ECF No. 8.  Plaintiffs therefore had a full and fair opportunity to be heard on this issue and only chose to make passing reference to it in their amalgamated motion.  See ECF No. 11 at 12 n.4.  The court is unaware of how the alleged applicability of a statute of limitations to plaintiffs' claims would impact any of its preceding analysis.  See id.  In any event, the court considers the argument waived.  See Bunton v. Colvin, 2014 WL 639618, at *5 (M.D.N.C. Feb. 14, 2014) ("Any issue not raised directly by Plaintiff is deemed waived.") (citing Muncy v. Colvin, 2013 WL 3062029, at *3 (W.D. Okla. May 16, 2013)

**IV.  CONCLUSION**

For the reasons foregoing reasons, the court **DENIES** plaintiffs' motion to remand and request for attorney's fees associated with their motion to remand, ECF No. 11, **DENIES** plaintiffs' motion for leave to amend, <u>id.</u>, and **DENIES** plaintiffs' motion for an extension of time or stay of response to the insurance defendant's motion to dismiss, <u>id.</u>  The court **DENIES** plaintiffs' motion to file supplemental argument in support of their amalgamated motion.  ECF No. 24.  The court **GRANTS** the insurance defendants' joint motion to dismiss plaintiffs' amended complaint, ECF No. 8.

**AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 16, 2026**
**Charleston, South Carolina**

---

(noting that "[t]his precise argument was not raised in [the] [p]laintiff's Opening Brief and should, therefore, be deemed to be waived.")).